Good morning, your honors. Assistant City Attorney Amy Field on behalf of Julio Benavides and Mario Flores. Your honors, this is a case where these officers are entitled to judgment as a matter of law on the successive force claim. In fact, this is precisely the kind of case where the law allows an officer to resort to deadly force. I think we need to be honest about the type of crime we're talking about here. Mr. Contreras was not a petty criminal. These officers were trying to apprehend a dangerous, violent, fleeing felon. And they shot him in the back. My problem with your argument is that you did not make the same argument in the trial court that you're making now. In fact, as I understand it, your clients consciously and expressly decided to pursue only a self-defense theory. And they specifically said, we're not talking about fleeing felon. That's not our theory. And when you come to us, that is your theory. So why should we consider that? Well, frankly, your honor, I absolutely disagree with that. I disagree that we said we were proceeding totally on a self-defense theory and not on a fleeing felony theory. But you said in the pretrial order and signed off on. There is that one line in the pretrial conference order. But when you read that entire paragraph in context, it's absolutely clear that we were relying on the totality of circumstances here and the totality of critical fact. But when you look at a self-defense argument, that's always on the totality of the circumstances. And to say that you look at the totality of the circumstances doesn't really help. I mean, in your pretrial conference memo, you said Mr. Contreras was not shot because he was a fleeing felon. He was shot because his actions led reasonably trained and seasoned officers to believe that he was armed and presented an immediate danger to their lives. I'm paraphrasing that second sentence. So what could be clearer? He was not shot because he was a fleeing felon. That's what your memo said. Your honor, I absolutely am comfortable with arguing that that was in a workful writing on the part of our trial attorney. I think he should have inserted the word he was not shot simply because he was a fleeing felon. However you want to rewrite it, we're having to look at what actually occurred and what was preserved and what wasn't preserved. Counsel, when you were in that particular thing, the memorandum of contentions of fact and law, the trial brief, do I have it right that you did in fact discuss the elements and say in that something to the effect that police officers are entitled to exceed the amount of force being used against them? Police officers may overcome resistance to effect an arrest or prevent escape. Reasonable belief that the officer or others were going to be harmed and a reasonable amount of force to protect himself and others from the harm being presented by Mr. Contreras. Was that language that you recall using in your? I don't have it right in front of me. I don't have those words committed, but you tell me. According to my memo, that was in your trial brief. Let's assume that, does that then give you a defense of others theory that was not evident in the PTO? The pre-trial order didn't contain a defense of others theory, did it? I think that the pre-trial conference order contained a general argument, which is what this case is all about, is that under the circumstances of this case, the use of force was reasonable. Yeah, but as my colleagues point out, in fact you did specifically reject the characterization of fleeing felon and said, in part, his actions led reasonably trained and seasoned officers to believe he was armed to present an immediate danger to the lives of the pursuing officers. That's correct, and I think that's a reasonable inference to draw from the undisputed evidence in this case. And didn't the jury explicitly, didn't it reject that? They didn't, I mean, they essentially said there was no gun, there was no reason to shoot him, isn't that what they said? The jury, absolutely, I understand the jury resolved the disputed fact as to whether Mr. Contreras was armed against the officers. I understand that the jury resolved the disputed fact as to whether he was turning and pointing a gun at the officers as he ran against them. But, Your Honor, Garner makes quite clear that those aren't the only circumstances under which an officer can resort to deadly force. Garner says that an officer is entitled to presume that somebody poses a serious threat to their safety and the safety of the public under two circumstances, one being if the suspect threatens the officer with a weapon. That's been resolved against us, but the other one is important here. Garner specifically says that an officer can presume that somebody is armed and dangerous if there is probable cause to believe he has committed a crime involving the infliction or threatened infliction of serious physical harm. What do they have to do? I'm sorry? Do they have to warn him when it's feasible? They have to warn him when it's feasible and the evidence here, okay, so let's start with was there probable cause to believe that Mr. Contreras had just committed a violent offense? Absolutely. The evidence on this point was undisputed and, in fact, much of Mr. Contreras' testimony corroborated this fact. Mr. Contreras placed himself in the van. He didn't deny that shots were being fired from the van. He didn't deny the evasive driving of the van. He didn't deny that when that van sped into the parking lot at the Jack in the Box, he jumped out of the van and took off running as fast as he could before the van even came to a full stop. Based on these undisputed facts, these officers were entitled to infer that he was armed and dangerous and he needed to be quickly apprehended. I can't imagine a circumstance that is more dangerous both to the pursuing officer and to the public at large. Fully apprehended is one thing, but shooting him four times in the back is another. Well, let's talk, okay, let's move forward to what happened. Well, yes, let's move to what happened. And if those were the only facts, you know, I think that the plaintiff keeps trying to focus the lens in on those final seconds, and they literally were seconds, Your Honor, what happened in the alley. The problem is that, and I understand you were not the trial lawyer from the right, you were not the trial lawyer. That's correct. Okay, so you were not the trial lawyer. But my understanding is all of that was put in front of the jury and they ruled against the city. That's correct, Your Honor. They're the trier. You're arguing facts to us now that we can't really. I completely disagree, Your Honor. Juries are there to decide facts. I understand that the jury decided the few disputed facts against my clients. They decided that the officers didn't see him pointing a gun as they ran down Florence Avenue, and they decided that Mr. Contreras did not have a gun with him in the final moments. Those are resolved against them. But juries decide facts. It's up to the court to take the undisputed facts and decide the constitutional question. The Supreme Court has made that absolutely clear. But one of the now undisputed facts is that he was not harmed. That's correct, Your Honor. And in Forrett, the undisputed fact, once the dust settled, was that Mr. Forrett wasn't armed either. But, Your Honor, the law requires that you view the totality of circumstances, not just what the split second was when the officers decided to use deadly force, and you view those facts as undisputed facts from the on-scene perspective of a police officer. And from the on-scene perspective of these police officers, they reasonably infer that Mr. Contreras was still armed and dangerous, based on the crime that they had probable cause that he had committed, based on his conduct every step of the way, his flight. But all of this is under the rubric of a fleeing felon, right? That's your new theory. That's your theory on appeal. Again, Your Honor, I disagree that it's under a new rubric. How would you describe in ten words or less the defense that you are now arguing to us? Under the totality of circumstances, the officers' use of force based on the undisputed facts was reasonable as a matter of law. So which defense is that? Which defense is that? If it's self-defense or defense of others, that was tried to the jury and lost. So what is the theory? Not the facts. The theory. I'm going back to the theory of the law. I mean, you look at a grand version of it. The law has to have a theory. There has to be some defense that you're raising that was either erroneously decided by the jury, which I take it is not your argument. You're not quarreling with the actual things that they found on the defenses that were tried. So what is it that's wrong with what happened at the trial? I think on these undisputed facts, the only reasonable conclusion that can be reached is that as a matter of law, this use of force was reasonable. Under the theory of self-defense or defense of others? Under both. I think there are ample facts to support that these officers had probable cause to believe that Mr. Contreras posed a threat not only to themselves in trying to apprehend him, but to the public at large. And I've misapprehended your brief because what you're saying now is the jury made a decision about self-defense and defense of others, and that decision, that factual decision is unsupported by the record. That's what I'm now hearing you say. I'm not saying that. The jury wasn't asked to decide self-defense or defense of others. They were asked to decide whether the use of force was reasonable under the law, and I'm saying that that is a question of law for the court to decide based on the facts as found by the jury. I think this case so closely parallels Forett versus Richardson that I don't understand how this court could not find the use of force was reasonable as a matter of law. The facts in Forett were really dramatically different, weren't they? I don't believe so, Your Honor. I think they parallel the facts in Forett. Well, the difference is in Forett. It was clear it was Forett who broke into the house, who had the gun, who injured the party, who then escaped and had weapons. None of that was, and all of that was rejected by the jury in this case. Your officers testified, we saw him leave, we saw the gun, we saw him driving, and all of that was contravened by other evidence in the case. The jury essentially rejected everything your officers said. I mean, literally your officers said it happened this way, and the video evidence was just the opposite. But there was no evidence on which the jury could reject the officers' testimony about hearing the gunshots, about the way the van sped away from the scene of the crime, about the witnesses that were pointing to the van, about what Mr. Contreras did when the van came to a stop in the Jack in the Box parking lot, about how Mr. Contreras fled down Florence Avenue with three police officers chasing him and a helicopter circling overhead, yet didn't submit to the officers' authority. I mean, Your Honor, the law is well established that under facts like that, the officers are entitled to presume that this suspect is armed and dangerous and presents a threat to everyone. What case are you citing for that? Is that the Tennessee v. Garner case? Tennessee v. Garner, let me read the court something else. If it's in your materials, you can cite your materials. Well, I'm going to cite something actually that was in the appellee's brief that I see quoted repeatedly throughout the Ninth Circuit opinions. A potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death. That's what these officers were confronting. I'm sorry, that's from Meniel v. City of Atlanta, and it's cited at page 29 of the appellee's brief, and I see that language repeat itself throughout Ninth Circuit authorities. It's the Eleventh Circuit case, Your Honor. You have about a minute and a half, if you'd like to reserve it. I'd like to reserve it. Thank you.  My name is Paul Hoffman. I'm here with Dale Galipo and John Fatahi on behalf of Mr. Contreras. I think that the city's case is entirely based on the facts as they'd like them to be and a refusal to accept the facts that were found. And in fact, the jury, the evidence in the trial must be viewed in the light most favorable to the plaintiff in every respect. And what those facts show is that these police officers came upon Mr. Contreras in that driveway where Mr. Contreras had his back to them, had both of his hands visible on his ankle, which had been shot, and that the officers within a second shot him four times in the back. The officers only made the argument, and I think that the trial record is just very clear about this, that not only was there a waiver of some kind of fleeing felon argument in the pretrial conference order, the case was tried about guns. In fact, if you read the appellant's opening brief in their trial brief, every other criteria is about a gun. And in fact, the jury completely disbelieved the officers. And the trial judge said in his order rejecting the Rule 50B motion that it was not just about Mr. Contreras' testimony, it was about physical evidence, it was about everything else about this case showed that these officers were not telling the truth when they said that Mr. Contreras threatened them with a gun, threatened them at all, had a gun at all. They said they saw his hands clearly at almost all times, including the chase. So the jury was entitled to find that these officers lied about the fact that there was a gun, lied about the fact that there was any potential threat to them, and that basically what they did is when they saw him in the driveway, they turned in a stationary weaver stance and tried to blow him away. And they shot him in the back. And that's why the jury found and the jury awarded such substantial damages in a case like this. I would say also that there's no way that the officers hearing gunshots and not knowing where they came from, being told by a person or perhaps citizens that they don't know the names of, that this van is the one where some of those shots may have been coming from, chasing that van for about two minutes perhaps, having people get out of a van, three people get out of a van, not knowing which of them was responsible for shots, not knowing what Mr. Contreras had done, Mr. Contreras coming out of the passenger side, Mr. Contreras running for no more than 14 or 15 seconds. That's all this took. This kid ran away for 15 seconds, he got hit in the back of his ankle by a shot, he went into a driveway, he was holding his ankle with his hands visible, and the officers tried to kill him. Instead they paralyzed him for life. On those facts, there is no reasonable police officer. Under Garner itself, and that's what Judge Wilson said, Judge Wilson said, this is Garner, you don't need anything other than Garner. But in addition to Garner, you have almost an unbroken line of cases in this court, adopting exactly what Garner says, which is you have to have, you have to be able to show that there's an immediate threat to the officers or to others. And there just wasn't factually in this case, and there's no case that they can point to. The Ford case is at the other end of the spectrum. I mean, as Judge Shea said in Ford, the man had tied up two people in a home invasion robbery in a residential area. The people were able to get free and call the police. The police came over. They were told exactly who they were looking for. They found who they were looking for. They were told that the man had stolen a car that had guns and ammunition in it. When they found the car during the chase, there were no guns and ammunition in it, which would lead a reasonable officer, I would suspect, to think that he had them. And then he led them on a 45-minute chase through residential backyards where the entire neighborhood was locked down because they're afraid this crazy person is going to go in and tie people up in another house and hold hostages. As compared to a situation where they don't know what Mr. Contreras has done, if anything, where there is just an innocent passenger and a scared kid who's running, and yet they're shooting at him. They didn't even have the right to shoot at him on the sidewalk, but that's not what the heart of this case was. The heart of the case was him being shot in the back four times in the driveway. No warnings. I think the evidence in the light most favorable to the plaintiff is there's no warnings at any point, but certainly nobody says there's warnings again. There was a dispute of evidence, but your view is that because we take the facts in the light most favorable to your client that there were not warnings. Right. And I think that's what the law is. There was evidence on the other side. No, that's right. There was a statement by Mr. Benavides that he had said stop police at one point. I don't think there's any evidence by anybody that they tried to give warnings at the end before they shot him. In other words, when they turned and they saw him, they shot him immediately. They didn't say put your hands up, stay where you are, let me see your hands, don't move. You're going to get shot if you move. None of that. They just shot him. And there's no question that warnings are feasible or that a reasonable jury could easily find factually that it was feasible to give Mr. Contreras warnings. He's standing there having been shot, holding his leg with his hands, so they know that he doesn't have a gun in his hands, and you've got two officers fairly close to him. They could have just said stop, put your hands up, surrender. The other side says, well, he had no intention of surrendering. The kid had run for 15 seconds. I mean, at that point, he didn't have any place to go. He was in a driveway that was, you know, there was a gate. He couldn't run anymore. He's holding his leg. I mean, they didn't give him a chance to surrender. And there's certainly no indication, unlike Forret. Forret was running, you know, I think there was something like 22 officers in Riverside that were chasing Forret. I mean, this is a man that was not going to give up. And they shot, I don't even know how many times they shot. It was a couple of dozen times, I think, maybe more. In this case, you know, he, Mr. Contreras actually testified, he didn't know exactly who was chasing him, and he didn't even know immediately that he was hit, other than he had a pain in his ankle, which led him to, you know, to stop running. So there's just no, there's no case that, in fact, all the cases are in this court, and I think in every court that you could look to, from Garner on down, that would, no police officer would think they could shoot in these circumstances. Nobody. And in fact, the LAPD, which trains based on Garner, and trains based on this court's cases, trained these officers that they couldn't do it. And they acknowledged that if it's not for the gun, these officers set a trial, they wouldn't have had the ability to shoot. And that's not just because the training materials, you know, somewhere out in the universe, these training materials are tied to this court's cases, they're tied to Garner, and they're designed to make sure that officers don't do what these officers did in this case. I don't know one more that we could say. I think we've said a lot in our brief. If there are any questions, I'm happy to answer them, but between the waivers that they've made and the facts, I think that the trial court was right to reject these arguments in the first instance, and you would be right to reject them in the second instance. Thank you, counsel. I don't believe we have any additional questions for you. Thanks very much. Ms. Field, you have remaining rebuttal time. Thank you. It's short. I don't see how anybody could reasonably conclude that these officers did not have probable cause to believe that Robert Contreras had just committed a serious, violent felony that put the entire community at risk and these officers at risk. I think that if any one of us had been out on the street that night and witnessed what these officers witnessed, that would be the inference we'd draw. We'd infer that the van that was speeding away contained the suspects who had just opened fire on a public street. I can't imagine anything more dangerous than that. It's an easy inference to draw. And the law says, and again I'm going back to Garner, I'm going back to the Supreme Court, says that a fleeing felony suspect is deemed to pose a serious threat of harm to an officer or to the public if they've just committed a crime involving the infliction of or threatened infliction of serious physical harm. We've got that in spades here, Your Honor. There's just no question about it. Now, if you want to focus on what happened in the final seconds, the only way that you can find that this was an unreasonable use of force is to disregard the Supreme Court's admonition that you have to view the facts in their totality, consider all the facts that were known to these officers. You have to view it from the perspective of an officer on the scene. You have to make allowance for the split-second nature of the decisions this officer is facing. These officers didn't know that Mr. Contreras had been shot in the ankle. All the objective facts to them suggested that he hadn't been shot, that they had missed, and that even though they were shooting at him, this guy was not going to stop. By Mr. Contreras' own testimony, after he was shot in the ankle, he kept running away real fast, and then he ducks into an alley where he's out of sight of the officers. Counsel, you've exceeded your time. You may have a sentence or two to wrap up if you'd like. The sentence or two I'd like to wrap up with, Your Honors, is that I think that this case is, if not an exact match, a very close match to Ford v. Richardson. And I think when you read that case carefully and you read the record in this case, that these officers are entitled to judgment as a matter of law. But if the court disagrees with me, I don't see where these officers could find clear warning in the case law that when you're trying to apprehend a violent fleeing felony suspect who by his own testimony is reaching in his pocket, holding a cell phone in his hand, that they could reasonably mistake to be a gun, that under those circumstances they can't shoot to protect themselves and to protect the community as a whole. Thank you, Counsel. The case just argued is submitted, and we appreciate helpful arguments from both counsel.
judges: Shea, Graber, Wardlaw